512 A.2d 301

Dana W. Gangewere, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Architects Licensure Board, Respondent.

Argued May 15, 1986, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as panel of three.

*Mark G. Yoder,* with him, *Ralph J. Althouse, Jr., Bingaman, Hess, Coblentz & Bell,* for petitioner.

*Alexandra J. Matthews,* Counsel, State Architects Licensure Board, with her, *Joyce McKeever,* Chief Counsel, Bureau of Professional and Occupational Affairs, and *David F. Phifer,* Chief Counsel, Department of State, for respondent.

OPINION BY JUDGE PALLADINO, July 14, 1986:

This is an appeal by Dana W. Gangewere (Petitioner) from an order of the Pennsylvania State Architects Licensure Board (Board) which suspended Petitioner's license to practice architecture for nine months, six months of which were stayed in favor of probation. We affirm.

Petitioner has been licensed by the Board to practice architecture since 1956. On August 12, 1981, Petitioner was convicted in the United States District Court for the Eastern District of Pennsylvania (federal court) on three felony counts of willfully and knowingly filing income tax returns which substantially underreported his income, in violation of Section 7206 of the Internal Revenue Code, 26 U.S.C. §7206(1). Petitioner was sub-

sequently sentenced to pay a fine of $15,000 and to serve two months imprisonment.

On July 8, 1983, the Board issued a Citation and Rule to Show Cause (Citation) which notified Petitioner that a formal hearing was to be held on October 6, 1983, to determine whether his license to practice architecture should be either suspended or revoked as a result of the felony convictions in the federal court. The Citation specifically charged Petitioner with violations of Section 11 and Section 11(b) of the Architects Law,[1] Section 9.151(7) of the Board's regulations,[2] and Section 9124(c)(1) of the Crimes Code.[3] After a hearing on these charges the Board, on August 8, 1985, issued an adjudication in which it concluded that Petitioner had violated Section 11(b) of the Architects Law and Section 9124(c)(1) of the Crimes Code. The Board also determined that Petitioner had not violated Section 11 of the Architects Law or Section 9.151(7) of the Board's regulations. The Board ordered that Petitioner's license be suspended for nine months, the first three months to be an active suspension, and the latter six months to be probationary.

---

[1] Act of July 12, 1919, P.L. 933, *as amended, formerly* 63 P.S. §26, repealed and replaced by Section 19 of the Architects Licensure Law, Act of December 14, 1982, P.L. 1227, *as amended,* 63 P.S. §34.19.

Section 11 of the Architects Law provided, in pertinent part: The said State Board of Examiners of Architects may, by unanimous action, either suspend, in the manner and for the reasons hereinafter set forth, any certificate of qualification to practice architecture, issued or renewed under the provisions of this act, or may revoke said certificate for incompetency or recklessness or for neglect of duty in the practice of architecture, or for dishonest practice in the practice of architecture, or upon conviction of the crimes hereinafter specified:

. . . .

Petitioner appeals from the Board's order asserting: (1) that the Board erred in suspending his license pursuant to Section 11(b) of the Architect's Law because that Law had been repealed before the Citation was issued; (2) Section 9124(c)(1) of the Crimes Code does not authorize the Board to suspend his license; (3) that the Board was estopped from suspending his license because it had renewed his license after he had been con-

In the event that the holder of a certificate of qualification to practice architecture issued by the board shall be convicted in any court of competent jurisdiction in this or any other state or commonwealth of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud, or other like offense or offenses, and a duly certified or exemplified copy of the record in such proceedings shall be filed with the board, the board shall revoke forthwith the registration to practice architecture which it before issued to the registrant so convicted.

. . . .

63 P.S. §34.19.

[2] 49 Pa. Code §9.151(7). Section 9.151(7) provides:
An architect registered in this Commonwealth may be considered negligent in his duties in the practice of architecture and unprofessional in his conduct as an architect if he commits the following acts or failures to act:

. . . .

(7) Being knowingly untruthful, deceptive, or misleading in any professional report, testimony, or other statement.

[3] 18 Pa. C. S. §9124(c)(1). Section 9124(c)(1) provides:
(c) State action authorized.—Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:
(1) Where the applicant has been convicted of a felony.
(2) Where the applicant has been convicted of a misdemeanor which relates to the trade, occupation or profession for which the license, certificate, registration or permit is sought.

victed and before the Citation was issued; (4) that the penalty of nine months suspension, six months of which is probationary, is overly harsh and an abuse of discretion; and (5) the Board's delay in issuing both the Citation and its adjudication prevents the Board from suspending Petitioner's license under the doctrine of laches and because the delay violates Petitioner's due process rights. We shall address each argument in turn.

### DID THE BOARD ERR IN SUSPENDING PETITIONER'S LICENSE PURSUANT TO SECTION 11(B) OF THE ARCHITECT'S LAW WHEN THAT LAW HAD BEEN REPEALED PRIOR TO THE ISSUANCE OF THE CITATION?

On December 14, 1982, the legislature enacted, effective immediately, the Architects Licensure Law, Act of December 14, 1982, P.L. 1227, *as amended,* 63 P.S. §34.1-34.22 (current law). Section 23 of the Architects Licensure Law repealed the Architects Law (former law). It is Petitioner's contention that because the Citation was not issued until July 8, 1983, subsequent to the effective date of the current law, the Board erred in relying upon the repealed former law when it suspended his license.

The Board, in addressing this argument, relied upon section 1962 of the Statutory Construction Act, 1 Pa. C. S. §1962, which provides:

> Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced.

The Board reasoned that because Section 11(b) of the former law required the Board to revoke an architect's license for a conviction of the crimes of "forgery, em-

bezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud or other like offense . . .", which the Board determined to be all crimes involving moral turpitude,[4] and Section 19(a)(8) of the current law provides that the Board may sanction an architect for "conviction of a felony or a crime involving moral turpitude," there is a substantial identity between the conduct proscribed by both statutes. The Board also found that Petitioner's conviction for willfully filing fraudulent tax returns would be grounds for revocation or suspension of his license under both the former and the current statutes.[5] The Board therefore concluded that "this continuity between the old and new statutory provisions has the effect of granting the Board the power to take action against [Petitioner] for his specific criminal conviction under both statutes, and that therefore the new provision substantially re-enacts the old provision."

---

[4] The Board adopted this Court's definition of "moral turpitude" as anything done knowingly contrary to justice, honesty or good morals. *See Yurick v. State Board of Osteopathic Examiners*, 43 Pa. Commonwealth Ct. 248, 402 A.2d 290 (1979). *Moretti v. State Board of Pharmacy*, 2 Pa. Commonwealth Ct. 121, 277 A.2d 516 (1971) (holding that conviction of willfully attempting to evade and defeat income tax due the United States is a crime involving moral turpitude).

[5] Although Petitioner does not challenge the Board's interpretation of either the Architects Law or the Architects Licensure Law as proscribing the willful and knowing filing of fraudulent income tax returns, we note that we agree with the Board's determination that such conduct is proscribed by both statutes. The common thread of all the enumerated offenses in the former law is the securing of funds to which one is not entitled by means of fraud. This conduct is precisely what is involved when one evades paying income tax by means of willfully and knowingly underreporting one's income. This Court has previously held that the knowing and willful evasion of income tax is a crime of moral turpitude. *Moretti v. State Board of Pharmacy*, 2 Pa. Commonwealth Ct. 121, 277 A.2d 516 (1971).

We agree with the Board's reasoning and conclusion. As the Pennsylvania Supreme Court stated in *In re: Dandridge*, 462 Pa. 67, 74, 337 A.2d 885, 889 (1975):

[E]ven though a statute is repealed, if some or all of its provisions are reenacted so that the conduct prohibited in the first statute remains censured by the reenactment, there is nothing which interferes with the power of the State to prosecute the matter without interruption.

In the case at bar, as was the situation in *Dandridge*, the proscribed conduct occurred when the former law was in effect, and the standard proscribing the conduct was carried forward without interruption by the later enactment. Thus, the Board's authority to sanction Petitioner for the conviction was not interrupted and its exercise of that authority by suspending Petitioner's license for the federal conviction was proper.

### DOES SECTION 9124(C) OF THE CRIMES CODE AUTHORIZE TH BOARD TO SUSPEND AN ARCHITECT'S LICENSE UPON CONVICTION OF A FELONY?

Section 9124(c) of the Crimes Code, entitled "Use of records by licensing agencies . . . State action authorized" provides that boards, commissions or departments of the Commonwealth which are authorized to license the practice of professions or occupations may suspend or revoke any license where the applicant has been either convicted of a felony or convicted of a misdemeanor which relates to the profession. 18 Pa. C. S. §9124(c). Petitioner argues that this section does not provide independent authority for the Board to suspend his license to practice architecture. He further argues that Section 9124(b)(5), which states "convictions which do not relate to an applicant's suitability for a license . . . shall not be used in consideration of an application for a license . . . ," prohibits the Board from suspending his

license for a conviction under the Internal Revenue Code. We find Petitioner's arguments to be without merit.

It is true that Section 9124(c) of the Crimes Code does not by its own terms grant authority to the Board to suspend or revoke an architect's license. The Section applies only to boards, commissions and departments which are otherwise so authorized. However, the plain language of the statute evinces the clear intention of the legislature to authorize licensing boards which have independent authority to suspend or revoke a license to do so for the conviction of a felony. This is consistent with Section 19 of the Architects Licensure Law which also authorizes the Board to suspend or revoke an architect's license for a felony conviction.

Additionally, there is no inconsistency between subsections (b) and (c) of Section 9124. Subsection (b) relates to an initial application for any license, registration or permit, while subsection (c) relates specifically to the authority of professional and occupational licensing agencies to refuse to grant, renew, suspend or revoke a professional or occupational license. Because we conclude that the subsections address different concerns, we cannot accept Petitioner's argument that subsection (b) limits subsection (c).

WAS THE BOARD ESTOPPED FROM SUSPENDING PETITIONER'S LICENSE BECAUSE IT HAD RENEWED THE LICENSE AFTER HE HAD BEEN CONVICTED AND BEFORE THE CITATION WAS ISSUED?

On May 3, 1983, more than twenty months after Petitioner's federal conviction, the Board renewed Petitioner's license pursuant to Section 10 of the Architects Licensure Law, 63 P.S. §34.10.[6] Petitioner

---

[6] 63 P.S. §34.10 provides:

§34.10. Issuance and renewal of certificates

(a) Upon payment of the fees required by section 11, an individual who has complied with section 8 or 9 shall be

argues that because the Board had renewed his license after his conviction but prior to issuing the Citation on July 8, 1983, it was estopped from suspending his license for conduct which occurred prior to the renewal.

This Court has previously considered and rejected this argument, holding that the purpose of periodic renewals of professional or occupational licenses is to raise revenues and to provide a current list of those people authorized to practice the profession or occupation within the Commonwealth; the renewal requirement neither serves as a statute of limitations nor requires the licensing agency to make a periodic determination of the licensee's qualifications. *Fumo v. State Real Estate Commission*, 85 Pa. Commonwealth Ct. 387, 481 A.2d 1257 (1984); *Ullo v. State Board of Nurse Examiners*, 41 Pa. Commonwealth Ct. 204, 398 A.2d 764 (1979). Because the renewal requirement is neither a statute of limitations nor a determination of a licensee's continued qualification to practice the profession or oc-

---

entitled to a certificate indicating that he is qualified to engage in the practice of architecture in this Commonwealth. Each certificate shall contain the name of the individual to whom it was issued and shall be valid for a period of two years.

(b) Every certificate shall expire on the day prescribed by rules and regulations promulgated by the board. An architect may renew his certificate by paying the renewal fee required by section 11(c). If the licensee fails to pay the renewal fee when required and fails to notify the board of his or her intention not to practice architecture, his certificate and his right to practice architecture shall expire. An architect who fails to renew his certificate may not engage in the practice of architecture and may not thereafter renew his certificate except upon payment of the renewal fee, penalty fee and the restoration fee required by section 11(c).

. . . .

(footnotes omitted).

cupation upon which the licensee may rely, the renewal does not estop the Board from later instituting proceedings to suspend or revoke an architect's license.

### Is the Nine Month Suspension, Six Months of Which is to be Stayed in Favor of Probation Overly Harsh?

Petitioner contends that the penalty imposed by the Board is excessive in view of the Board's findings that Petitioner had a previously unblemished record and a reputation for honesty in the community.

Section 19 of the Architects Licensure Law, 63 P.S. §34.19, grants broad discretion to the Board to revoke or suspend an architect's license or to censure an architect for the conviction of a felony.[7] This Court may not substitute its own judgment for that of the Board and, absent a flagrant abuse of discretion, will not interfere in discretionary matters of the Board. *Moeslein v. State Board of Pharmacy*, 60 Pa. Commonwealth Ct. 574, 432 A.2d 295 (1981). Our review of the record reveals that the Board's decision to suspend Petitioner's license was arrived at only after careful deliberation, is supported by the evidence in the record and is within the Board's authority. We conclude, therefore, that the Board's action of suspending Petitioner's license for nine months was not an abuse of discretion.

---

[7] Section 11(b) of the Architects Law required the Board to revoke an architect's license for the conviction of forgery, embezzlement and similar offenses. Although we have upheld the board's action undertaken pursuant to Section 11 of the Architects Law, which has been repealed, we do not believe, nor does either Petitioner or the Board contend, that the Board is required to revoke Petitioner's license on the basis that the Citation was issued under the former law. Because this issue is not presented in this appeal we need not address it.

DID THE DELAY OF TWENTY-THREE MONTHS BETWEEN THE DATE OF PETITIONER'S CONVICTION AND THE ISSUANCE OF THE BOARD'S CITATION, OR THE DELAY OF TWENTY MONTHS BETWEEN THE DATE OF THE BOARD'S HEARING AND THE ISSUANCE OF ITS ADJUDICATION, VIOLATE PETITIONER'S DUE PROCESS RIGHTS OR BAR THE BOARD FROM SUSPENDING PETITIONER'S LICENSE UNDER THE DOCTRINE OF LACHES?

Petitioner contends that the Board is barred from suspending his license because of the Board's delay, in both instituting the proceedings and rendering an adjudication violated his constitutional right to due process and constituted laches. In order to prevail on these contentions, Petitioner has the burden of establishing some harm or prejudice to his interests caused by the delay. *Ullo,* 41 Pa. Commonwealth Ct. at 206-07, 398 A.2d at 766. Petitioner alleges no harm which he has suffered as a result of the delay. His only allegation in this respect is that "third persons with whom he has dealt with in good faith stand to suffer damages as a consequence of work interruption." This does not constitute harm caused by the delay. Petitioner's clients would suffer the consequences of work interruption no matter when the suspension occurred.

Because we conclude that the Board's findings of fact are supported by substantial evidence, no error of law was committed and Petitioner's constitutional rights were not violated,[8] we affirm the order of the Board.

ORDER

AND NOW, July 14, 1986, the order of the State Architects Licensure Board, No. 81-AR-2042, dated August 8, 1985, is affirmed.

---

[8] *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.