Suzanne T. LESKO,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 17, 1995.

Decided April 13, 1995.

---

1. We decline appellant's invitation to reconsider the prior decisions of the Superior Court in *Spells, Brown* and *Pendola*. Even if we disagreed with the analysis in these cases, as a three judge panel we are bound by the rulings of a court en banc.

Timothy P. Wile, Asst. Counsel In–Charge, for appellant.

No appearance, for appellee.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

NEWMAN, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department), appeals two orders of the Court of Common Pleas of Allegheny County (trial court) sustaining the statutory appeal of Suzanne T. Lesko (Licensee) from both a ninety day suspension and a one-year suspension of her operating privilege imposed pursuant to former Section 13(m)[1] of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, *as amended,* formerly 35 P.S. § 780–113(m). We reverse.

The facts of this matter are not in dispute. Licensee was arrested on two separate occasions (November 4, 1991 and February 27, 1992) for possession of a controlled substance with intent to deliver in violation of Section

---

**1.** Section 13(m) of the Drug Act was repealed, effective August 27, 1993, by Acts 1993–33 and 1993–58. The provisions of former Section 13(m) are now found at Section 1532(c) of the Vehicle Code, 75 Pa.C.S. § 1532(c).

13(a)(30) of the Drug Act, 35 P.S. § 780–113(a)(30).[2] At the time of her arrests, Licensee did not possess a valid Pennsylvania driver's license. Licensee pled guilty to both offenses. During Licensee's colloquy, the criminal court did not inform her that there would be a suspension of her operating privilege because of the convictions.

By official notices dated and mailed April 22, 1993, the Department notified Licensee that her operating privilege was being suspended because of her criminal convictions for consecutive periods of ninety days and one year, pursuant to former Section 13(m) of the Drug Act. Licensee filed two separate statutory appeals with the trial court on May 24, 1993.

The trial court consolidated both appeals and conducted a hearing on the matter on November 17, 1993. During the hearing, Licensee testified, *inter alia,* that she did not have a valid driver's license during the period of her arrests, that her motor vehicle was not involved in the commission of the drug offenses, and that the criminal court did not notify her that her operating privilege would be suspended as a result of her convictions. The trial court sustained Licensee's appeals. The Department filed timely notices of appeal to our court, and we subsequently granted the Department's motion for consolidation of the appeals.[3]

The Department asks us to review the following two issues: (1) whether the fact that Licensee neither had a driver's license during the period of her arrests, nor used a motor vehicle in the commission of the drug offenses, precludes the suspension of her operating privilege pursuant to former Section 13(m) of the Drug Act; and (2) whether Licensee was entitled to be informed of the collateral civil consequences of an operating privilege suspension at the time she pled guilty to the underlying criminal offenses.

■ Our scope of review of a trial court's decision in a license suspension case is limited to determining if the trial court committed an error of law or abused its discretion, and in ascertaining that all necessary findings of fact are supported by competent evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

■ With respect to the first issue, the Department contends that there is no requirement that an individual arrested for drug offenses possess a valid driver's license in order to be subject to an operating privilege suspension mandated by former 35 P.S. § 780–113(m). We agree.

Former Section 13(m) of the Drug Act provided in pertinent part:

(m) Notwithstanding any other provision in this act, any person, not a registrant, who possesses, sells, delivers, offers for sale, holds for sale or gives away any controlled substance, in addition to any other penalty provided in this or any act, upon conviction for a violation of this act, shall have his or her *operating privilege* suspended.

35 P.S. § 780–113(m) (emphasis added).

The term "operating privilege" is defined in Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, as follows:

"Operating privilege." *The privilege to apply for and obtain a license to use* as well as the privilege to use a vehicle on a highway as authorized in this title, but not a contract, property right or civil right.

75 Pa.C.S. § 102 (emphasis added).

■ It is clear from a reading of former Section 13(m) of the Drug Act in conjunction with the definition of "operating privilege"

**2.** Section 13(a)(30) of the Drug Act provides as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

**3.** By order entered January 10, 1995, we directed Licensee to file a brief within 14 days of the entry of the order and indicated that if she failed to do so, she would be precluded from filing a brief. Licensee did not respond within the specified time period.

that the lack of a driver's license [4] should not preclude the imposition of a suspension because the term "operating privilege" encompasses a much broader scope than the term "driver's license." Therefore, in the instant case, the Department properly suspended Licensee's operating privilege because in so doing, it suspended her "privilege to apply for ... a license," and not her actual driver's license. Consequently, we hold that the fact that Licensee did not have a driver's license during the period of her arrests does not preclude the Department from suspending her operating privileges.

Also with regard to the first issue, the Department argues that the trial court erred when it considered it determinative that Licensee did not use a motor vehicle in the commission of the underlying criminal offenses. Again, we agree with the Department.

The courts of this Commonwealth have consistently adhered to the principle that our legislature enacted former Section 13(m) of the Drug Act to send a strong message that neither possession, nor use of illegal drugs, will be tolerated. For example, our Supreme Court has stated:

> [T]he prospect of losing one's driver's license may deter a potential drug user from committing that first drug offense. At least, that potential user may consider the loss of his/her license and its effect on employment and transportation prior to committing a drug offense.
>
> *Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 320, 635 A.2d 124, 127 (1993).

 The non-use of a motor vehicle in the commission of the underlying drug offense is not a valid defense to a suspension of a licensee's operating privilege. To hold that non-use of a motor vehicle is a defense would contravene the legislative purpose behind the statute. Therefore, we hold that the trial court erred when it considered it determina-

tive that Licensee did not use a motor vehicle in the commission of the underlying criminal offenses.

With respect to the second issue, the Department maintains that there is no requirement that a criminal court inform a Drug Act defendant of the suspension mandated as a collateral civil consequence of a Drug Act conviction. This issue has been definitively answered by our Supreme Court in several recent decisions.

 In *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994), our Supreme Court stated that the loss of driving privileges is a civil collateral consequence of certain criminal offenses. Thus, the court held that when a licensee's suspension is a collateral civil consequence of his or her conviction, there is no requirement that he or she know of this consequence at the time of his or her guilty plea. Relying on its precedent in *Commonwealth v. Bursick,* 526 Pa. 6, 584 A.2d 291 (1990), our Supreme Court reasoned that since a trial court's scope of review of an operating privilege suspension is limited, the court cannot entertain arguments in a collateral civil proceeding that attack the validity of the underlying criminal conviction.

Accordingly, we reverse the orders of the trial court and direct that the Department reimpose its suspension of Licensee's operating privilege.[5]

### ORDER

AND NOW, April 13, 1995, we reverse the orders of the Court of Common Pleas of Allegheny County and direct that the Department of Transportation reimpose the suspensions of Suzanne T. Lesko's operating privilege according to this opinion.

---

**4.** Section 102 of the Code defines driver's license in relevant part as:
"[a] license or permit to drive a motor vehicle."

**5.** We specifically note that the issue of whether the Department properly imposed progressive suspensions against Licensee's operating privi-

lege as a result of her pleading guilty to both offenses during a single criminal proceeding is not presently before us. *See Hettich v. Department of Transportation, Bureau of Driver Licensing,* 166 Pa.Commonwealth Ct. 71, 646 A.2d 34 (1994).